UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLEXXIKON INC., <br> Plaintiff, <br> v. <br> NOVARTIS PHARMACEUTICALS CORPORATION, <br> Defendant. | Case No.17-cv-04405-HSG <br><br> **ORDER DENYING DEFENDANT'S VENUE-RELATED MOTIONS** <br> Re: Dkt. Nos. 33, 37 |

Pending before the Court are Defendant Novartis Pharmaceuticals Corporation's venue-related motions: a motion to dismiss (or, in the alternative, transfer) under 28 U.S.C. § 1406, Dkt. No. 33, and a motion to transfer under 28 U.S.C. § 1404, Dkt. No. 37. For the reasons set forth below, Defendant's motions are **DENIED**.

**I.    BACKGROUND**

On November 2, 2017, Plaintiff Plexxikon Inc. filed an amended complaint against Defendant alleging direct patent infringement, Dkt. No. 40 (First Amended Complaint or "FAC") ¶¶ 41-50, as well as inducement of infringement and contributory infringement, *id.* ¶¶ 51-61. Plaintiff filed the original complaint on August 3, 2017. Dkt. No. 1.

On October 12, 2017, Defendant filed a motion to dismiss (or, in the alternative, transfer) under section 1406. Dkt. No. 33. Plaintiff filed its opposition on October 26, 2017, Dkt. No. 35, and Defendant replied on November 2, 2017, Dkt. No. 36. Also on November 2, Defendant filed a motion to transfer the case under section 1404. Dkt. No. 37. Plaintiff filed its opposition on November 16, 2017, Dkt. No. 48, and Defendant replied on November 24, 2017, Dkt. No. 50.

On November 3, 2017, the Court consolidated these venue-related motions to be heard on January 25, 2018. Dkt. No. 41. At a case management conference on November 28, 2017, the

Court advanced the hearing on these motions to December 12, 2017. *See* Dkt. Nos. 41, 51. The Court finds this matter appropriate for disposition without oral argument and deems the matter submitted. *See* Civil L.R. 7-1(b).

## II.   DEFENDANT'S MOTION TO DISMISS OR TRANSFER UNDER SECTION 1406

Courts are required to either dismiss or—if doing so is "in the interest of justice"—transfer cases that "lay[] venue in the wrong division or district." 28 U.S.C. § 1406(a). Another section of that title, section 1400(b), is the "sole and exclusive provision controlling venue in patent infringement actions . . . ." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017). That provision states that a patent infringement action "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Because "a domestic corporation 'resides' only in its State of incorporation" for the purposes of section 1400(b), *TC Heartland*, 137 S. Ct. at 1517, and because Defendant's state of incorporation is Delaware, *see* Dkt. No. 33-1 (Decl. of Robert Gleeson or "Gleeson Decl.") ¶ 4, the only possible basis for venue in this case is Defendant's having "committed acts of infringement and [having] a regular and established place of business" here, *see* 28 U.S.C. § 1400(b). The Court finds there is such basis.

At this early stage of the case, allegations that a defendant has committed acts of infringement within a certain district are sufficient for the purposes of section 1400(b). *See In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) (stating, in evaluating a petition for mandamus challenging district court's finding that venue was proper in patent infringement action, that the "issue of infringement is not reached on the merits in considering venue requirements") (citation omitted). Next, the Federal Circuit has enumerated "three general requirements relevant to the inquiry" as to whether a defendant has a "regular and established place of business" under the provision: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). The inquiry is specific to the facts of each case. *Id.* at 1362. The first requirement is satisfied where there is a "physical, geographical location in the district

2

from which the business of the defendant is carried out." *Id.* The second requirement is satisfied where a business "operates in a steady, uniform, orderly, and methodical manner," rather than one that is "sporadic." *Id.* (citation, internal quotation marks, and brackets omitted). The third requirement is satisfied where the defendant has "establish[ed] or ratif[ied] the place of business." *Id.* at 1363.

Venue properly lies in this District under section 1400(b). First, Plaintiff has alleged that Defendant committed "acts of infringement within this district," including "selling and offering to sell the infringing product within the district to its [San Francisco-based] distributor." FAC ¶ 6. Second, the requirements of *Cray* are satisfied. Defendant "leases and operates two adjacent facilities in San Carlos," California—a manufacturing facility and a research facility. Gleeson Decl. ¶¶ 8-10. Nothing in the record indicates that these facilities are "sporadic" in nature; to the contrary, common sense establishes that they are locations where "steady, uniform, orderly, and methodical" business activities take place within the meaning of *Cray*. Finally, Defendant confirmed the facilities are "the place of the defendant." *See id.* ¶ 8.

Defendant devotes much of its motion to the argument that "the patent venue statute requires a connection between the alleged acts of infringement and the regular and established place of business." Dkt. No. 33 at 10. It supports this argument by reading into the statute a level of ambiguity, *see id.* at 4; invoking the "policy underlying the patent venue statute," *see id.* at 4-5; and examining the provision's legislative history, *see id.* at 5-7. The Court need not consider these contentions, because it concludes that the plain language of the statute does not include a nexus requirement. Courts should "ordinarily resist reading words or elements into a statute that do not appear on its face," *Bates v. U.S.*, 522 U.S. 23, 29 (1997), and this is one of the many cases where that is true. The Court declines to read into section 1440(b) a nexus requirement.

The Court thus denies Defendant's motion under section 1406.

### III. DEFENDANT'S MOTION TO TRANSFER UNDER SECTION 1404

Even if venue is proper, a district court may transfer a civil action to any other district or division where it might have been brought "[f]or the convenience of the parties and witnesses [or] in the interest of justice." 28 U.S.C. § 1404(a). The purpose of this statute is "to prevent the

3

waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964), *superseded by statute on other grounds*. "In patent cases, the law of the regional circuit applies when considering a § 1404 motion." *Eli Lilly & Co. v. Genentech, Inc.*, No. 13-CV-0919 YGR, 2013 WL 4396718, at *4 (N.D. Cal. Aug. 13, 2013) (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008)).

The moving party first must show that the transferee forum is "one in which the action might have been brought." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Next, the moving party must "demonstrate that a transfer of venue would promote the convenience of parties and witnesses and the interests of justice." *Kannar v. Alticor, Inc.*, No. C-08-5505 MMC, 2009 WL 975426, at *1 (N.D. Cal. Apr. 9, 2009). At the second step, "the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation and internal quotation marks omitted). The Court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id*. at 498-99.

The plaintiff's choice of forum is usually given "great weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). The Ninth Circuit has declared that

> [i]n judging the weight to be accorded [the plaintiff's] choice of forum, consideration must be given to the extent of [the parties'] contacts with the forum, including those relating to [the plaintiff's] cause of action. *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration. *Id.*

*Id.* The weight of deference accorded, however, is not a binary choice between "great weight" and

4

"minimal consideration." The Ninth Circuit has found that "less deference" is owed to a nonresident plaintiff's choice of forum. *Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998) (citing *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990); *Pac. Car*, 403 F.2d at 954); *see also Lucas v. Daiichi Sankyo Co.*, No. C 11-0772 CW, 2011 WL 2020443, at *3 (N.D. Cal. May 24, 2011) (declaring that nonresident plaintiff's choice of forum is owed "substantially reduced" deference).[1] And courts have found that less deference is owed to the plaintiff's choice of forum where the operative facts did not occur there. *See Anderson v. Cnty. of Siskiyou*, 2011 U.S. Dist. LEXIS 41023, *7 (N.D. Cal. Jan. 11, 2011) ("The deference otherwise accorded to the plaintiff's choice of forum is further undermined by the minimal nexus between this District and the events that form the basis of the action.") (citing *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1146 (C.D. Cal. 2009)). In short, "the degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint." *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (internal quotation marks and brackets omitted).

Defendant seeks a transfer of the action to the District of Delaware. Dkt. No. 37 at 9. The parties do not dispute that this action could have been brought there. *See id.*; Dkt. No. 48 at 5 n.2. That leaves the Court's "individualized . . . consideration of convenience and fairness." The Court considers each contested factor in turn.

**A.  Plaintiff's Choice of Forum**

In this case, Plaintiff's choice of forum in this District is entitled to "great weight." Because this is Plaintiff's "home turf," *see* Dkt. No. 48 at 1; Dkt. No. 48-1 (Decl. of Robert Bernstein or "Bernstein Decl.") ¶ 1, this is not a case in which its choice of venue might be

---

[1] Although *Gemini* and *Contact Lumber* address *forum non conveniens*, such cases are instructive for assessing motions to transfer under 28 U.S.C. § 1404(a). *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("This statute partially displaces the common law doctrine of *forum non conveniens*. Nonetheless, *forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion." (internal citations omitted)).

5

entitled to "less deference." And, because the technology at issue was designed and developed here, Bernstein Decl. ¶¶ 3-7, there is a sufficiently "significant connection" between the forum and Plaintiff's allegations. Thus, unless the remaining factors are strongly in Defendant's favor, its motion must fail.

### B. Convenience of the Parties, Convenience of the Witnesses, and Availability of Compulsory Process

Defendant argues that "the inconvenience to [Defendant] of having its [non-third-party] witnesses travel to California is greater than the inconvenience to [Plaintiff] of having its witnesses travel to Delaware . . . ." Dkt. No. 37 at 11. But "[t]ransfer should not be ordered simply to make [the action] more convenient to the defendant, and the venue transfer provisions of § 1404(a) are not intended to merely shift the inconvenience to the plaintiff." *STMicroelectronics, Inc. v. Lopez*, No. 15-cv-3919-PJH, 2015 WL 9178417, at *5 (N.D. Cal. Dec. 17, 2015). Transferring this case to Delaware would only shift the inconvenience from Defendant to Plaintiff, which is insufficient to warrant transfer.

Next, Defendant argues that "almost all of the third-party witnesses will be required to fly across the United States if the litigation continues in this District," and that transferring the case would "allow [them] to avoid a transcontinental flight." *Id.* at 12. Defendant lists 28 potential third-party witnesses, *see* Dkt. No. 37-1 (Decl. of Gregory Ferraro or "Ferraro Decl.") ¶¶ 10-40, and makes much of Plaintiff's "pil[ing] up a laundry list" of nearly 30 witnesses "without a clear explanation of why the testimony of each of these witnesses is important or even relevant," Dkt. No. 50 at 1. But Defendant—who shoulders the burden in this transfer motion—fails to articulate why the presence of *its* proffered witnesses would be necessary at trial, and why their testimony could not be obtained via discovery mechanisms, for example. This factor therefore does not weigh in favor of transfer.

Lastly, Defendant argues that "the availability of compulsory process heavily favors transfer," because this Court could not compel the attendance at trial of many third-party witnesses who live on the East Coast. Dkt. No. 37 at 12 (citing Fed. R. Civ. P. 45(c)(1)(A)). Here, again, Defendant assumes without basis that many or all of its potential witnesses will be required to

1 actually testify at trial—and moreover ignores that many of Plaintiff's potential witnesses live
2 here, and would be similarly inconvenienced in the event of transfer. This factor is therefore at
3 best neutral, and does not weigh in favor of transfer.

### C. The Forum's Local Interest and Congestion in the Transferee District

Next, Defendant argues that "[t]he local interest factor weighs in favor of transfer in this case because Wilmington, Delaware represents the center of gravity of this case." Dkt. No. 37 at 13. But "this factor takes into account the current and transferee forums' interest 'in having localized controversies decided at home,'" *Hangzhou Chic Intelligent Tech. Co., Ltd. v. Swagway, LLC*, No. 16-cv-04804, 2017 WL 1425915, at *4 (N.D. Cal. Apr. 21, 2017) (quoting *Decker Coal Co.*, 805 F.2d at 843), not the case's "center of gravity." Defendant asserts that "[e]ven considering that Plexxikon is headquartered in Berkeley, the relationship of this dispute to the District of Delaware is stronger than it is to the Northern District of California," Dkt. No. 37 at 14—but because Plaintiff designed and developed the patent at issue here, this is clearly a localized controversy in which this District has an interest.

Finally, this Court finds that some consideration of court congestion in the District of Delaware is appropriate under the unique circumstances presented here. Plaintiff notes that "two out of the four judgeships allotted [to] the District of Delaware are vacant," resulting in crowded dockets and "a quarter of civil cases . . . being assigned to a 'Vacant Judgeship docket' . . . ." Dkt. No. 48 at 10. Defendant counters that the Court "should reject Plaintiff's invitation to depart from the policy of not comparing court congestion . . . ." Dkt. No. 50 at 8 (citing *Perez v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *2 n.5 (N.D. Cal. Jan. 6, 2017)). In *Perez*, the Court stated that such comparisons "could have the unintended consequence of penalizing efficiency by effectively placing more cases in the districts with the shortest time to trial." 2017 WL 66874, at *2 n.5. But this case does not involve a garden-variety comparison of the efficiency of two districts operating at normal capacity. Rather, it takes into account unusual circumstances in the would-be transferee court that are likely to lead to undue delay.[2] While this

---

[2] The Court also notes that Defendant's argument that "two new judges have been identified for the District of Delaware and are expected to be nominated soon," Dkt. No. 50 at 9, is undercut by

7

factor is far from dispositive, it is worth consideration and modestly militates against transfer.

Because the balance of factors weighs in favor of adhering to Plaintiff's choice of forum, Defendant's motion to transfer under section 1404(a) is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (or, in the alternative, transfer) under section 1406 and motion to transfer under section 1404 are **DENIED**. While the hearing set for December 12, 2017 is vacated, the Court **SETS** a case management conference for December 19, 2017 at 2:00 p.m. Case management statements, which should include a stipulated case schedule (or, if the parties cannot reach an agreement, separate proposals), are due on December 12, 2017.

**IT IS SO ORDERED.**

Dated: 12/7/2017

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

the article to which it cites for support—which is dated September 22, 2017, and states only that the Administration was expecting to make a "formal announcement" by the end of the month, Dkt. No. 50-5 at 3 (ECF numbering). This motion was filed well after that, on November 2, 2017. *See* Dkt. No. 37.

8