May 13, 2019

By ECF

The Honorable Elizabeth D. Laporte
San Francisco Courthouse
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

*Re:* *Plexxikon Inc. v. Novartis Pharmaceuticals Corporation*
*No. 4:17-cv-4405*

Dear Judge Laporte:

The parties respectfully submit the attached joint statement regarding a discovery dispute regarding the Court's May 3, 2019 Order (ECF. No. 161) and request a ruling.

Respectfully,

/s/ *Daralyn J. Durie*

Daralyn J. Durie
*Attorney for Plaintiff*
*Plexxikon Inc.*

/s/ *Thomas P. Steindler*

Thomas P. Steindler
*Attorney for Defendant*
*Novartis Pharmaceutical Corporation*

cc: All counsel of record

## I. NOVARTIS'S POSITION

Novartis respectfully requests the Court to enforce its Order on Defendant's Motion to Compel Discovery Regarding Dr. Bridges' Expert Report (ECF. No. 161) to compel Plaintiff to produce documents showing or reflecting the different synthetic routes Dr. Bridges considered in coming up with the synthetic route he actually used. These documents were precisely the subject of Novartis' motion to compel, which the Court granted. Plexxikon refuses to produce them. Novartis asks the Court to order their production. In support of its request, Novartis states as follows:

Novartis moved to compel the production of documents relating to the synthetic routes Dr. Bridges considered but did not ultimately use when he tried to recreate the patented invention. ECF. No. 161 at 5. Dr. Bridges testified that "the synthetic protocol was probably first written out somewhere in around August of last year." ECF. No. 158, Ex. A at 63:2-14. "Dr. Bridges testified that he considered 'at least half a dozen' different synthetic routes for making one of the compounds before settling on the synthetic routes he ultimately used." ECF No. 161 at 2 (citing Ex. A at 64:6-10).

In its May 3, 2019 Order, the Court ruled that "[t]o the extent that there are documents that contain 'factual ingredients' about the unused synthetic routes that Dr. Bridges considered, Plaintiff must produce those documents to Defendant." *Id.* at 6. The Court cited Fed. R. Civ. P. 26 Advisory Committee Notes to the 2010 Amendment, which state that "'facts or data [should] be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients.'" *Id.*

Despite Dr. Bridges' testimony that he considered "at least half a dozen" different synthetic routes, Plaintiff has produced only one: a synthetic protocol which Plaintiff represents was last modified on November 29, 2018. When asked whether Plaintiff was representing that there is no additional documentation of the other synthetic routes Dr. Bridges testified he considered, Plaintiff's response was that they had "produced all factual material from the other documents with synthetic routes that Dr. Bridges created; the remainder is not subject to production." Ex. A (email from R. Krishapriyan to T. Steindler, dated May 9, 2019). Plaintiff's counsel refused to clarify whether there was documentation of the other synthetic routes Dr. Bridges testified he considered during a meet and confer held on May 10, 2019.[1]

Novartis submits it is entitled to the production of documents reflecting each of the "at least half a dozen" different synthetic routes Dr. Bridges considered, and that the Court should order their immediate production. A synthetic route – that is, a "recipe" or set of instructions for how to make a chemical compound – clearly contains "facts or data" considered by Dr. Bridges. How can they not? A synthetic route sets out the various steps used to make a compound, the various intermediates used, the reactions to be conducted, sometimes specifying the reaction conditions and the reagents used in the proposed route. It is not fundamentally different from a recipe to

---

[1] Plaintiff also violated the Court's Standing Order on Discovery Procedures for the May 10, 2019 meet and confer by failing to have lead counsel present for the meet and confer conference call.

bake a cake. These clearly contain "facts or data," particularly where the Advisory Committee Notes cited by the Court make clear that "facts or data" should be "interpreted broadly." And the different synthetic routes are directly relevant to the subject matter of Dr. Bridges' opinion on enablement, as they are probative of the quantity of experimentation necessary to practice the claimed invention. ECF 161 at 2 (citing *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1372-73 (Fed. Cir. 1999)). As the Court noted, this is a "limited universe of documents about the rejected synthetic routes [that] will not create undue burden or expense" for Plaintiff. Dkt. 161 at 6.

Plexxikon has produced everything *but* the alternative synthetic routes that were the subject of Novartis' motion – papers and articles "that Dr. Bridges collected in coming up with his alternative synthetic routes." Plexxikon should be required to produce the alternative synthetic routes that were the subject of Novartis' motion.

Plexxikon contends that the different synthetic routes are exempt from discovery because they were allegedly included in communications with counsel which are protected under Rule 26(b)(4)(C), which, Plexxikon argues, covers "any 'preliminary expert opinions." But the Court has already ruled that "the unused synthetic routes that Dr. Bridges considered are *not* protected from disclosure under Rule 26(b)(4)(C)," ECF 161 at 5-6, and that the different synthetic routes are *not* "preliminary expert opinions." *Id*. at 6 ("Plaintiff has not asserted that Dr. Bridges intended to include these documents in his report, that they were actually included in earlier versions of his report, or that the documents represent summaries and conclusions that might reasonably be expected to be included in a draft report.") None of that has changed.[2]

The Court has already held that Dr. Bridges "considered" the alternative synthetic routes. *Id*. at 5 ("Dr. Bridges testified that he considered the rejected synthetic routes in making Compound 2"). And it should be beyond question that the synthetic routes identify or contain "facts or data" or "factual ingredients" – indeed, literally *ingredients* or chemical reagents – Dr. Bridges considered.

Plexxikon also contends that the rejected synthetic routes are not relevant to enablement on grounds that they are not "experiments." Not so. There is no authority for the proposition that the amount of work needed to devise a method of making a claimed compound that is later implemented in a laboratory is not relevant to whether the specification enables any person skilled in the art "to make and use" the claimed invention. 35 U.S.C. § 112. The case Plexxikon cites below, *Phigenix, Inc. v. Genentech Inc.*, 238 F. Supp. 3d 1177 (N.D. Cal. 2017), says no such thing.

It took Dr. Bridges four months and at least six different iterations just to come up with a synthetic route to make one compound he was willing to propose should be tested in a laboratory. That work is directly relevant to whether the specification enables a person of

[2] Moreover, Dr. Bridges testified that he devised all of the synthetic schemes himself and that he did not "get input from anyone other than myself" in devising the schemes. Bridges Dep. Tr. 59:2-8. The fact that he communicated them to counsel does not make them privileged.

ordinary skill in the art to make and use the full scope of the claimed invention. Novartis is entitled to that discovery.

Accordingly, Novartis respectfully requests that the Court order Plaintiff to immediately produce documents reflecting or setting out each of the different synthetic routes Dr. Bridges considered.

**PLEXXIKON'S POSITION:**

Novartis seeks to rewrite the Court's order, not to enforce it. The Court ordered production of documents "that contain 'factual ingredients' about the unused synthetic routes that Dr. Bridges considered . . . ." ECF No. 161 at 6:18–22. Contrary to Novartis' assertion about what it thinks must be the case, the Court's order distinguished such "factual ingredients" documents from other documents relating to "'alternative analyses, testing methods, or approaches to the issues' that may be inquired about but were not mandatory to disclose . . . ." *Id.* at 6:8–17 (citation omitted). The Court recognized that "[i]t is possible that documents about the unused synthetic routes fall into either category." *Id.* at 6:17–18. Novartis disagrees and insists that a synthetic route necessarily "clearly contains" facts or data that Dr. Bridges must have considered. Its complaint is based on disagreement with the Court's distinction, not on Plexxikon's production.[3]

***Plexxikon Has Complied With the Court's Order.***

Plexxikon has complied with the Court's order. Dr. Bridges has identified the documents that fall within the "factual ingredients" set of documents the Court ordered produced, *see* Declaration of Dr. Alexander J. Bridges ("Bridges Decl.") ¶ 2, and Plexxikon has produced them. Novartis has *all the* papers and articles that Dr. Bridges collected in coming up with his alternative synthetic routes. *Id.*

***Plexxikon Has Followed the Distinction the Court Drew.***

The only other documents relevant to Novartis' motion are communications between Dr. Bridges and counsel for Plexxikon. *See* Bridges Decl. ¶ 3. These documents are not "facts or data" that Dr. Bridges considered as inputs to his analysis; they are communications Dr. Bridges *generated*. In terms of the Court's order, they are at most "alternative analyses, testing methods, or approaches" in the form of communications with counsel.[4] *See id.*; *Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 592 (2016) ("The 2010 Advisory Committee notes clarify that a party seeking discovery of 'facts or data' provided by counsel or an expert is limited to facts and data—not any further analyses of those facts and data[.]"). As the Court held, such alternative approaches may be a subject of examination (though Novartis did not question Dr.

---

[3] Novartis also complains that Plexxikon's lead counsel was not present on the meet and confer, but Novartis never requested a meet and confer with Plexxikon's lead counsel.

[4] The Court's prior order stated that "during his deposition, Dr. Bridges testified that he considered the rejected synthetic routes in making Compound 2." ECF No. 161 at 5:13–14 (citing Bridges Dep. Tr. at 64:6–10). Dr. Bridges testified that these were routes that he developed and *considered using*, not that they were facts or data that he considered in coming up with the opinions expressed in his report.

Bridges on them at his first deposition) but production of these documents was not required, either by Rule 26 or by the Court's order. Plexxikon would be happy to provide these communications to the Court for *in camera* review. On their face they show that they do not fall within the scope of the Court's order.

***In Addition to Being Outside the Scope of the Court's Order, the Remaining Documents Are Communications With Counsel Protected By Rule 26(b)(4)(C).***

In addition to being outside the scope of the Court's order, these documents are also attorney-expert communications exempt from disclosure under Rule 26(b)(4)(C). The Court's order recognized that "[w]hile Plaintiff is correct in theory that '[d]ocuments regarding methods Dr. Bridges chose not to use are independently protected from disclosure to the extent they were prepared for and sent to counsel,' Jt. Ltr. at 6, Plaintiff has not shown here that Dr. Bridges did so." ECF No. 161 at 5:25–27. At this point the only documents pertaining to potential alternative syntheses that have not been produced are communications Dr. Bridges prepared for and contemporaneously sent to counsel. *See* Bridges Decl. ¶ 3. Such communications are exempt from discovery under Rule 26(b)(4)(C), which protects "any 'preliminary' expert opinions . . . ." Fed. R. Civ. P. 26(b)(4)(C) advisory committee's notes to 2010 amendment.

Because the communications in question do not contain unproduced "factual ingredients," they are not subject to production in the first place, Plexxikon was not required to establish the factual predicates for their being independently protectable as work product. *See Ludwig v. Pilkington N. Am., Inc.*, No. 03 C 1086, 2003 WL 22242224, at *3 (N.D. Ill. Sept. 29, 2003) ("Where documents are withheld under a claim that they are exempt from discovery altogether u nder Rule 26(b)(4)(B), there is no express requirement that a privilege log be produced.").

Novartis initially contended that Rule 26(b)(4)(C)(ii) expressly provides that communications with counsel are *not* protected if they identify "facts or data" that the expert "considered." After Plexxikon pointed out that the rule states that expert-attorney communications are unprotected only if they "identify facts or data *that the party's attorney provided* and that the expert considered in forming the opinions to be expressed," Novartis removed the argument. Fed. R. Civ. P. 26(b)(4)(C)(ii) (emphasis added). The communications in question were provided by Dr. Bridges, not by attorneys. As such, the exception provided by Rule 26(b)(4)(C)(ii) does not apply here.

Novartis's demand for these communications between Dr. Bridges and Plexxikon's counsel is also inconsistent with its own aggressive use of Rule 26(b)(4)(C) to shield communications with its experts. As just one example, Novartis's counsel instructed their expert not to reveal conversations he had with another Novartis expert *that he had considered in forming his opinions*, simply because counsel was also present at the time. *See* Ex. B, Jennings Dep. Tr. at 27:14–28:24.

***Novartis Is Wrong Regarding the Relevance of Reactions Thought About but Not Performed.***

Finally, Novartis is also wrong when it claims that unused synthetic schemes are "directly relevant to the subject matter of Dr. Bridges' opinion on enablement, as they are probative of the

quantity of experimentation necessary to practice the claimed invention." Possible synthetic routes that Dr. Bridges thought up but never attempted to implement are not "experiments." *See*, ECF No. 158-01 (Bridges Dep. Tr.) at 64:20–65:4 (explaining that "[t]here was no experimentation done prior to the execution of the scheme as was done by me"); *cf. Phigenix, Inc. v. Genentech Inc.*, 238 F. Supp. 3d 1177, 1188 (N.D. Cal. 2017), *appeal docketed*, No. 18-1042 (Fed. Cir. Oct. 13, 2017) (distinguishing between "prophetic" examples and "experiments"). The Court correctly noted that "[f]ailed attempts to practice the invention are evidence of undue experimentation," but an unattempted synthetic scheme is not a "failed attempt to practice the invention." ECF No. 161 at 3:10–11. It is, by definition, not an "attempt to practice the invention" at all.