1   THOMAS P. STEINDLER (*Pro Hac Vice*)
    tsteindler@mwe.com
2   PAUL M. SCHOENHARD (*Pro Hac Vice*)
    pschoenhard@mwe.com
3   MICHAEL S. NADEL (*Pro Hac Vice*)                    Redacted - Public Version
    mnadel@mwe.com
4   IAN B. BROOKS (*Pro Hac Vice*)
    ibrooks@mwe.com
5   JENNIFER ROUTH (*Pro Hac Vice*)
    jrouth@mwe.com
6   DAVID MLAVER (*Pro Hac Vice*)
    dmlaver@mwe.com
7   MCDERMOTT WILL & EMERY LLP
    500 N. Capitol St., N.W.
8   Washington, DC 20001
    Tel:  (202) 756-8000
9   Fax:  (202) 756-8087

10  WILLIAM G. GAEDE III (SBN: 136184)
    wgaede@mwe.com
11  MCDERMOTT WILL & EMERY LLP
    275 Middlefield Road, Suite 100
12  Menlo Park, CA 94025
    Tel:  (650) 815-7400
13  Fax:  (650) 469-1470

14  KATHERINE NICOLE CLOUSE (*Pro Hac Vice*)
    nclouse@mwe.com
15  McDERMOTT WILL & EMERY LLP
    28 State Street
16  Boston, MA 02109
    Tel: (617) 535-4000
17  Fax:  (617) 535-3800

18  *Attorneys for Defendant*
    *Novartis Pharmaceuticals Corporation*
19
                    UNITED STATES DISTRICT COURT
20                  NORTHERN DISTRICT OF CALIFORNIA
                         OAKLAND DIVISION
21

22  PLEXXIKON INC.,                        CASE NO.  4:17-cv-04405-HSG (EDL)

23          Plaintiff,                     **DEFENDANT'S NOTICE OF MOTION &**
                                           **MOTION TO STRIKE SECOND**
24      v.                                 **SUPPLEMENTAL REPORT OF**
                                           **PLAINTIFF'S EXPERT GREGORY K.**
25  NOVARTIS PHARMACEUTICALS               **LEONARD, PH.D**
    CORPORATION,
                                           Date:        December 3, 2019
26          Defendant.                     Time:        2:00 pm
                                           Judge:       Hon. Haywood S. Gilliam, Jr.
27                                         Courtroom:   2 – 4th Floor

28          **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.    LEGAL STANDARD ..................................................................................................... 3

     A.      The Patent Local Rules .................................................................................... 3

     B.      The Timing of Expert Disclosures ................................................................... 5

     C.      The Requirements for Expert Opinions ........................................................... 5

III.    STATEMENT OF FACTS ............................................................................................. 6

     A.      The Accused Product and Its Position in the Market ....................................... 6

     B.      Plexxikon's Damages Contentions ................................................................. 7

     C.      Expert Discovery ............................................................................................ 8

     D.      Dr. Leonard's Second Supplemental Expert Report ..................................... 10

IV.    ARGUMENT .............................................................................................................. 11

     A.      The Second Supplemental Expert Report Is Inconsistent with Plexxikon's Damages Contentions ................................................................. 12

     B.      The Second Supplemental Expert Report Is Inconsistent with Dr. Leonard's Prior Opinions and Testimony ......................................................... 14

     C.      The Second Supplemental Expert Report Is Conclusory .................................... 15

V.    CONCLUSION ........................................................................................................... 17

McDermott Will & Emery LLP
Attorneys At Law

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

6

*Adobe Sys. Inc. v. Wowza Media Sys.*,
No. 11–cv–02243–JST, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014)........................................4

7

*Apple Inc. v. Samsung Elecs. Co.*,
No. 5:12-cv-630-LHK-PSG, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014)..................................4

8

9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................................................................................................6, 9

10

11

*Finjan, Inc. v. Blue Coat Sys.*,
879 F.3d 1299 (Fed. Cir. 2018)................................................................................13

12

13

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
No. 13-cv-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) ...............................4, 13

14

*Finjan, Inc. v. Proofpoint, Inc.*,
No. 13-cv-05808-HSG, 2015 WL 9460295 (N.D. Cal. Dec. 23, 2015) (Gilliam, J.)................3

15

16

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)...........................................................................16

17

18

*Internet Servs. LLC v. Immersion Corp.*,
No. C-06-2009 CW (EDL), 2008 WL 2051028 (N.D. Cal. May 13, 2008) ..............................5

19

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
No. 14-cv-876-RS (JSC), 2018 WL 3646842 (N.D. Cal. Aug. 1, 2018)..............................5, 16

20

21

*KlausTech, Inc. v. Google LLC*,
No. 10-cv-05899-JSW (DMR), 2018 WL 5109383 (N.D. Cal. Sept. 14, 2018) ......................4

22

*Looksmart Grp., Inc. v. Microsoft Corp.*,
386 F. Supp. 3d 1222 (N.D. Cal. 2019) ...........................................................4, 12, 13

23

24

*Twilio, Inc. v. Telesign Corp.*,
No. 16-cv-06925-LHK (SVK), 2017 WL 5525929 (N.D. Cal. Nov. 17, 2017) ......................4

25

26

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)..................................................................................16

27

*Wendell v. GlaxoSmithKline LLC*,
858 F.3d 1227 (9th Cir. 2017)................................................................................6, 17

28

McDermott Will & Emery LLP
Attorneys At Law

1

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001)................................................................................................5, 14

2

**Other Authorities**

3

Fed. R. Civ. P. 26 ...........................................................................................................5, 14, 15

4

5

Fed. R. Evid. 702 ...............................................................................................................1, 6, 16

6

Patent L.R. 3-8 ........................................................................................................................3, 7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

MOTION TO STRIKE 2D SUPP LEONARD REPORT
CASE NO. 4:17-CV-04405-HSG (EDL)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

**NOTICE OF MOTION AND MOTION TO STRIKE SECOND SUPPLEMENTAL EXPERT REPORT OF PLAINTIFF'S EXPERT GREGORY K. LEONARD, PH.D.**

TO PLAINTIFF PLEXXIKON INC. and its attorneys of record:

PLEASE TAKE NOTICE that on December 3, 2019,[1] before the Honorable Haywood S. Gilliam, Jr., in Courtroom 2, 4th Floor of the Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, Defendant Novartis Pharmaceuticals Corporation ("Novartis") will and does move to strike the October 4, 2019 Second Supplemental Expert Report of Gregory K. Leonard, Ph.D. (Ex. 1), which presents opinions regarding damages that (1) were not presented in Plaintiff Plexxikon Inc.'s ("Plexxikon") damages contentions as required by Patent L.R. 3-8; (2) were not disclosed by Dr. Leonard in, and are inconsistent with, his February 4, 2019 Expert Report, his February 21, 2019 Supplemental Expert Report, his April 11, 2019 Expert Reply Report, and/or his May 1, 2019 deposition, as required by this Court's Revised Scheduling Order (ECF No. 80); and (3) even if timely (it is not), fails to satisfy the requirements of Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702.

This motion is based on this Notice of Motion and Motion, the following Memorandum in Support, the Exhibits thereto, all documents in the Court's file, the briefing filed herein and in opposition hereto, and such other written or oral argument as may be presented at or before the time this motion is heard by the Court.

## I.    INTRODUCTION

This is a patent case.  Plexxikon alleges that Novartis infringes certain claims of two patents, U.S. Patent No. 9,469,640 ("the '640 patent") and U.S. Patent No. 9,844,539 ("the '539 patent") through the sale of TAFINLAR® (dabrafenib), a drug used to treat cancer.

As required by the Patent Local Rules, Plexxikon provided Novartis with its damages contentions on April 9, 2018, in which Plexxikon stated that it sought damages in the form of at least a reasonable royalty.  Plexxikon did not identify either a royalty rate or a total amount of

---

[1]    Novartis seeks to have this motion heard on December 3, 2019, because (1) the parties are already scheduled to appear before the Court for a pretrial conference and hearing on motions in limine on that day (*see* ECF No. 276); and (2) the Court's calendar indicates that the next available law and motion date is February 27, 2020, which is after the trial in this matter is scheduled to conclude (*see* ECF Nos. 257, 276).

McDermott Will & Emery LLP
Attorneys At Law

1    damages it contended was owed for any period of time.  And at no point during this litigation has

2    Plexxikon supplemented or sought leave to amend its damages contentions.

3        Then during expert discovery, Plexxikon disclosed the expert opinions of Gregory K.

4    Leonard, Ph.D., who prepared three expert reports and sat for deposition.  Dr. Leonard presented

5    opinions regarding damages on the basis of a hypothetical negotiation, assuming a "relevant time

6    period" of October 2016 through the end of 2018.  Dr. Leonard assessed the market conditions

7    during that time period; he discussed relevant considerations during that time period; he developed

8    an opinion regarding a range of royalty rates that would have been negotiated for that time period;

9    and he calculated damages for that time period.

10       Critical to this motion is what Dr. Leonard and Plexxikon did not do.  Dr. Leonard expressly

11   did not assess the market conditions post-2018; did not discuss relevant considerations post-2018;

12   did not offer any opinion regarding a range of royalty rates that would have been negotiated (at the

13   time of a hypothetical negotiation in 2016) for any period post-2018; and did not calculate any

14   damages for any period post-2018.  Indeed, Dr. Leonard stated that any post-2018 analysis would

15   be more complex and would likely yield different results.  Plexxikon, meanwhile, offered nothing

16   beyond its original contentions, which were devoid of detail regarding royalty rate or damages, and

17   Dr. Leonard's reports.  Accordingly, the only damages theories Novartis has had an opportunity to

18   test and rebut have related to the period prior to 2019.

19       It was not until Novartis alerted Plexxikon to its intention to file a motion in limine seeking

20   to preclude the introduction of previously undisclosed opinions or evidence regarding damages

21   post-2018, that Plexxikon decided for the first time to ask for financial information for 2019 or to

22   develop and disclose any theory for this later period.  And on October 4, 2019—four months after

23   the close of expert discovery and well into the trial preparation phase of this case—Plexxikon

24   served a Second Supplemental Expert Report from Dr. Leonard.

25       Dr. Leonard's Second Supplemental Expert Report, ███████████████████

26   ████████████████████████████████████████████  But that is

27   misleading.  What the Second Supplemental Report actually does is present ████████

28   ████████████████████████████████—a theory that could

- 2 -

have and should have been presented, or at least presaged, in Plexxikon's contentions and in Dr. Leonard's original report.  Plexxikon and Dr. Leonard, however, chose not to do so then, and should not be permitted to do so now.

As detailed below, Dr. Leonard's Second Supplemental Expert Report is both untimely and incomplete.  This case has always been scheduled to extend into 2019 and Plexxikon can claim no surprise or inability to allege 2019 damages previously. Indeed the Patent Local Rules and this Court's scheduling order were designed to prevent exactly this sort of eleventh-hour distraction. The Second Supplemental Expert Report should be struck; and consistent with Novartis's Motion in Limine No. 5 (ECF No. 272), Plexxikon should be precluded from presenting evidence or opinion regarding damages post-2018.

## II.    LEGAL STANDARD

### A.    THE PATENT LOCAL RULES

"'The Northern District of California's Patent Local Rules exist to further the goal of full and timely discovery and provide all parties with adequate notice and information with which to litigate their cases.'" *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 9460295, at *1 (N.D. Cal. Dec. 23, 2015) (Gilliam, J.) (quoting *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at *1 (N.D. Cal. Aug. 20, 2014)).  "'The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'" *Id.* (quoting *Verinanta Health*, 2014 WL 4100638, at *1). "A district court has wide discretion in enforcing the Patent Local Rules." *Id.* (citing *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005)).

Patent Local Rule 3-8 requires that a plaintiff serve Damages Contentions, which shall:

(a) Identify each of the category(-ies) of damages it is seeking for the asserted infringement, as well as its theories of recovery, factual support for those theories, and computations of damages within each category, including:

    1.    lost profits;

    2.    price erosion;

    3.    convoyed or collateral sales;

    4.    reasonable royalty; and

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

5.     any other form of damages.

(b) To the extent a party contends it is unable to provide a fulsome response to the disclosures required by this rule, it shall identify the information it requires.

Such contentions are to be served "[n]ot later than 50 days after service of the Invalidity Contentions." *Id.*

"[A] party's damages contentions must disclose the basis for its expert's specific theory of recovery." *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1233 (N.D. Cal. 2019) (citing *Golden Bridge Tech. Inc. v. Apple, Inc.*, No. 12-cv-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014) (asking whether "the expert has permissibly specified the application of a disclosed theory, or has . . . impermissibly substituted a new theory altogether")).   "The requirements of L.R. 3-8 could not be more clear: identify the theories of recovery; identify the known facts that support the theories; do the math." *Twilio, Inc. v. Telesign Corp.*, No. 16-cv-06925-LHK (SVK), 2017 WL 5525929, at *2 (N.D. Cal. Nov. 17, 2017).   "Expert reports may not introduce theories not set forth in contentions." *Apple Inc. v. Samsung Elecs. Co.*, No. 5:12-cv-630-LHK-PSG, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014) (citing *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 08-0273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010)).   In assessing whether to strike expert opinions because they introduce a new theory, the Court asks "has the expert permissibly specified the application of a disclosed theory, or has the expert impermissibly substituted a new theory altogether?"   *Id.*   If the theory is new, an affirmative showing of prejudice is not required "because prejudice is inherent in the assertion of a new theory after discovery has closed, and because to impose such a burden would create an incentive for late disclosure." *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11–cv–02243–JST, 2014 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014); *KlausTech, Inc. v. Google LLC*, No. 10-cv-05899-JSW (DMR), 2018 WL 5109383, at *8 (N.D. Cal. Sept. 14, 2018) ("Requiring a party to show prejudice in the assertion of a new theory after the close of discovery would incentive parties to make untimely disclosures, and contravene the spirit of the patent local rules, which require early crystallization of infringement theories."); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 3640694, at *4 (N.D. Cal. June 11, 2015) (granting motion to strike new theory and reasoning that

- 4 -

"[a]s this new theory was identified for the first time after the close of fact discovery, prejudice to Defendant is inherent.").

### B.   THE TIMING OF EXPERT DISCLOSURES

Rule 26(a)(2)(D) of the Federal Rules of Civil Procedure requires that "[a] party must make these disclosures [of expert testimony] at the times and in the sequence that the court orders." "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "This rule excludes untimely expert witness testimony, unless the 'parties' failure to disclose the required information is substantially justified or harmless.'" *Internet Servs. LLC v. Immersion Corp.*, No. C-06-2009 CW (EDL), 2008 WL 2051028, at *1 (N.D. Cal. May 13, 2008) (quoting *Yeti by Molly*, 259 F.3d at 1106). "The party failing to timely serve expert reports bears the burden of demonstrating its failure was either substantially justified or harmless." *Id.* (citing *Yeti by Molly*, 259 F.3d at 1107).

### C.   THE REQUIREMENTS FOR EXPERT OPINIONS

Rule 26(a)(2)(B), Fed. R. Civ. P., requires that an expert report contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Courts throughout this Circuit and elsewhere routinely strike expert reports that fail to comply with these requirements. *See, e.g.*, *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-876-RS (JSC), 2018 WL 3646842, at *9 (N.D. Cal. Aug. 1, 2018) (granting motion to strike expert opinions that failed to provide a "complete statement" and "the basis and reasons for them" as required by Rule 26(a)(2)(B)(i)).

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

Rule 702, Fed. R. Evid., further requires that "(b) the [expert] testimony is based on sufficient facts or data" and "(d) the expert has reliably applied the principles and methods to the facts of the case." In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Rule 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Regional circuit law generally governs the admissibility of expert testimony pursuant to Rule 702 and *Daubert*.

To be admissible under Rule 702, the expert's testimony must be both relevant and reliable. *See, e.g.*, *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). With regard to the reliability evaluation, the focus is "solely on principles and methodology, not on the conclusions that they generated." *Id.* (quoting *Daubert*, 509 U.S. at 595). In other words, the district court's task "is to analyze not what the experts say, but what basis they have for saying it." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (*Daubert II*)). The party offering expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10.

## III.   STATEMENT OF FACTS

### A.   THE ACCUSED PRODUCT AND ITS POSITION IN THE MARKET

Novartis's Tafinlar product was approved by the FDA for the treatment of non-resectable metastatic melanoma in May 2013 and has been sold in the U.S. market since that time—initially by GSK, and since 2015 by Novartis.[2] Plexxikon's '640 and '539 patents issued several years later—in late-2016 and late-2017, respectively. Accordingly, assuming for purposes of this motion that one or more claim(s) of the '640 patent is valid, the date of first infringement is October 18, 2016. For purposes of a patent damages analysis with respect to the '640 patent, it is thus assumed—and the parties agree—that the date of the hypothetical negotiation would have been approximately October 18, 2016.[3] (Ex. 2 (hereinafter, "Leonard Rpt") ¶ 47; ██████████

██████████

---

[2]   The Tafinlar+Mekinist combination therapy was approved in January 2014.

[3]   If all claims of the '640 Patent are found to be invalid, but one or more claim(s) of the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

Plexxikon's damages expert, Gregory K. Leonard, Ph.D., defines the relevant market for purposes of a damages analysis as the market for selective BRAF inhibitors for melanoma therapy. Leonard Rpt. ¶ 61. As of October 2016, there were many available options for the treatment of non-resectable metastatic melanoma. But of these treatments, at the time of the hypothetical negotiation, there were only two approved combination therapies involving a selective BRAF inhibitor: (1) Novartis's Tafinlar+Mekinist combination therapy; and (2) Genentech/Roche's Zelboraf+Cotellic combination therapy.

A third combination therapy was approved by the FDA in 2018 and has been sold in the U.S. since that time: Array BioPharma's Braftovi+Mektovi combination therapy.

**B.    PLEXXIKON'S DAMAGES CONTENTIONS**

Plexxikon never presented during fact discovery a contention regarding the appropriate royalty rate upon which to calculate damages for 2019. Nor did Plexxikon ever present a contention regarding the quantum of damages owed.

Plexxikon served its damages contentions pursuant to Patent L.R. 3-8 on April 8, 2018. Ex. 4. In that document, Plexxikon presented "preliminary" contentions regarding a reasonable royalty, convoyed sales, lost royalties, and price erosion. Plexxikon did not, however, identify any particular royalty rate (or range of rates) that it contended are appropriate for this case. Nor did Plexxikon provide a specific theory regarding how such a rate (or range of rates) would be calculated. Rather, Plexxikon stated merely that the "floor" for such a royalty would be the royalties Plexxikon would forego receiving from Roche by permitting a "second" entrant into the marketplace. Ex. 4 at 5. In other words, Plexxikon's sole damages theory for a reasonable royalty assumed that Novartis would be a second market entrant and that no other market competition would exist.

Not surprisingly, Plexxikon included a statement in its damages contentions purporting to reserve its rights to supplement:

'539 patent is not found to be invalid, then the date of the hypothetical negotiation would be December 19, 2017—the date of issuance of the '539 patent.

MOTION TO STRIKE 2D SUPP LEONARD REPORT
CASE NO. 4:17-cv-04405-HSG (EDL)

1
2

Plexxikon's damages contentions are inherently preliminary, and likely to change as discovery moves forward. Plexxikon therefore intends to update these contentions after it has obtained the information necessary to make a more fulsome calculation of its damages.

3
4

Ex. 4 at 1. But Plexxikon never supplemented or otherwise moved to amend its damages

5

contentions at any time during this case. ECF No. 272 at 2.

6

### C.   EXPERT DISCOVERY

7

During expert discovery, Plexxikon served expert reports on the issue of damages from

8

Gregory K. Leonard, Ph.D. Dr. Leonard's opening expert report provides the primary framework

9

for his opinions. Specifically, Dr. Leonard developed a construct based on a hypothetical

10

negotiation "assumed to [have] taken[n] place on or around October 18, 2016."[4] (Leonard Rpt.

11

¶ 47; ▮▮▮▮▮▮▮▮▮▮). In doing so, Dr. Leonard could have developed and presented

12

opinions regarding the terms of a hypothetical license that would apply to 2019 (and even 2020 or

13

further into the future). But Dr. Leonard expressly chose not to develop or present such opinions.

14

Instead, Dr. Leonard focused on what he called a "relevant time period," which he identified

15

as "from the time of infringement up through 2018." (Leonard Rpt. ¶ 56). Dr. Leonard clarified

16

the significance of this limited "relevant" time period to his opinions:

17
18
19
20
21
22
23
24
25

At the time of the hypothetical negotiation, Zelboraf® and Tafinlar® were the only targeted therapies available, with Array BioPharma's Braftovi® (encorafenib) potentially entering in 2018. The parties to the hypothetical negotiation would have recognized that, through the relevant time period (time of first infringement through the end of 2018), in the absence of a license it was likely that the large majority of Tafinlar® sales would have been captured by Zelboraf®, the closest available substitute product, and Plexxikon would have earned royalties on these sales. Potential competition from Array BioPharma, and uncertainty regarding approvals in additional patient populations could influence the negotiated royalties for subsequent time periods, but for the purposes of this report, I focus on the reasonable royalty for the time period from the date of first infringement through 2018, or approximately the date of this report. To determine a reasonable royalty rate for the period at issue, I have considered the relevant economic factors through 2018. I note that license agreements (including those produced in this case) often include provisions that allow for the adjustment of royalties in response to the occurrence of events in the future . . . . Consistent with this, my analysis focuses on the royalty rate that would be negotiated for the period up through 2018.

26
27
28

---

[4]   Dr. Leonard did not perform any analysis based on a hypothetical negotiation date of December 19, 2017—the date of issuance of the '539 patent. (Leonard Tr. 46:7-13.)

MOTION TO STRIKE 2D SUPP LEONARD REPORT
CASE NO. 4:17-cv-04405-HSG (EDL)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

1   Leonard Rpt. ¶ 68.  Within these limits, Dr. Leonard developed assumptions regarding the portions

2   of the parties' market shares Array would capture in 2018, Leonard Rpt. ¶ 72 & n.104, but

3   developed no such assumptions for 2019 or later periods.  Additionally, Dr. Leonard acknowledged

4   that the Plexxikon-Roche Collaboration Agreement is potentially distinguishable from the license

5   that would result from a hypothetical negotiation because it is an exclusive license, but he

6   concluded that "the non-exclusivity of the hypothetical license requires no adjustment given its de

7   facto exclusive nature over the relevant time period."  Leonard Rpt. ¶ 113.  Indeed, Dr. Leonard

8   identified the "floor" for his royalty range by dividing what he calculated as the lump sum total of

9   Plexxikon's foregone royalties[5] from Roche during the "relevant period" by Novartis's projected

10   total Tafinlar sales during the same period.  Leonard Rpt. ¶¶ 69-77 ████

11       Notably, at the time Dr. Leonard issued his initial expert report, he did not have access to

12   Novartis's final 2018 sales data.  Nonetheless, he presented his opinions regarding the hypothetical

13   negotiation and the rate(s) that would have been agreed as a result of such a negotiation for the

14   period October 2016 through December 2018.  Then, when final data was available, he prepared

15   and presented his February 21, 2019 Supplemental Expert Report, in which he (appropriately)

16   applied his previously-presented opinions to the final sales data.  Leonard Supp. Rpt. ¶¶ 3-4.

17       At deposition Dr. Leonard ████████████████████████████████████



---

[5]    As addressed in Novartis's *Daubert* motion, ECF No. 202, Dr. Leonard's approach is incorrect.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15   **D.    DR. LEONARD'S SECOND SUPPLEMENTAL EXPERT REPORT**

16        On August 20, 2019, consistent with this Court's Revised Scheduling Order, Novartis

17   advised Plexxikon that it intended to present a motion in limine asking the Court to preclude

18   Plexxikon from presenting evidence or argument regarding post-2018 damages, due to the

19   limitations of Dr. Leonard's disclosure and Plexxikon's failure to provide any theory for post-2018

20   damages.  Four days later, on August 24, Plexxikon for the first time asked Novartis to provide it

21   with 2019 sales data.  And thereafter, although such data was clearly not relevant to any damages

22   theory Plexxikon or its expert had presented, Novartis voluntarily provided updated data.

23        On October 4, 2019, without advance notice or leave of the Court, Plexxikon served the

24   Second Supplemental Expert Report of Gregory K. Leonard, Ph.D.

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW



McDermott Will & Emery LLP
Attorneys At Law



Dr. Leonard does not provide any detail regarding the inputs into or results of a hypothetical negotiation for a license to cover a period extending into 2019.  For example, although Dr. Leonard references ▮▮▮▮▮▮▮▮▮ Dr. Leonard provides neither evidence nor analysis of such ▮▮▮▮▮▮▮ Nor does Dr. Leonard explain how he decided to ▮▮▮▮▮▮▮▮▮▮▮

## IV.    ARGUMENT

A year and a half after the deadline for serving damages contentions and four months after the close of expert discovery in this case, Plexxikon served the Second Supplemental Expert Report of Gregory K. Leonard, Ph.D., which presents for the first time theories and opinions (in cursory form) regarding post-2018 damages.

Unlike a case in which a party or a party's expert simply updates damages *calculations* to account for new information, Dr. Leonard's new *theories* are not grounded in either his earlier expert reports or Plexxikon's damages contentions.  To the contrary, Dr. Leonard expressly limited the opinions he previously presented to what he called a "relevant time period" that concluded at the end of 2018; and Dr. Leonard stated that the opinions he previously presented would not apply

to any subsequent time period, because additional complexities (including the impact of additional market participants) would be introduced. And Plexxikon's damages contentions similarly assumed that a rate would be based on Novartis being the second of only two market competitors—an assumption that did not even hold for the latter portion of 2018 and does not apply at all in 2019.

As bad or worse, Dr. Leonard's Second Supplemental Expert Report does not provide a complete statement of the reasons and bases for his opinions and does not apply any reliable methodology.

The Court should strike Dr. Leonard's Second Supplemental Expert Report setting out the new post-2018 damages theory and preclude Dr. Leonard and Plexxikon from presenting any theory of post-2018 damages at trial.

### A. THE SECOND SUPPLEMENTAL EXPERT REPORT IS INCONSISTENT WITH PLEXXIKON'S DAMAGES CONTENTIONS

Plexxikon's damages contentions—which it never supplemented or sought leave to amend—provide no theory that would support a reasonable royalty rate during any period in which the market for selective BRAF inhibitors for the treatment of metastatic melanoma comprises more than two market participants. Plexxikon should not now be entitled to present such a theory through Dr. Leonard. *Looksmart*, 386 F. Supp. 3d at 1233 ("A party's damages contentions must disclose the basis for its expert's specific theory of recovery.").

More specifically, Plexxikon's damages contentions do not provide any detail regarding the specific rate that Plexxikon contends would be a reasonable royalty to compensate for infringement in this case. *Cf.* Ex. 4, *passim*. But Plexxikon at least disclosed generally a theory that the "floor" for a royalty rate would be based on the expected royalties from Roche that Plexxikon would have expected to forego by permitting a competitor (Novartis) into what Plexxikon otherwise viewed as a single-participant market. Ex. 4 at 5. Notably, however, Plexxikon's contentions do not address or present *any* theory regarding how such a rate would be impacted by expectations of additional market competition—*e.g.*, from Array BioPharma—in the future.

Consistent with Plexxikon's general theory, Dr. Leonard's opening expert report expressly limits the "relevant time period" for a license that result form a hypothetical negotiation to the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

period beginning October 2016 through the end of 2018, during which he believed the market impact of competition from Array BioPharma was minimal, such that Plexxikon and Novartis would have (in his view) treated the market as effectively a two-player market.  Leonard Rpt. ¶¶ 69, 113; █████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Now, Plexxikon, through Dr. Leonard, presents for the first time ███████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

This is improper.  Plexxikon could have presented a contention regarding that royalty rate would apply to 2019—or at least how such a rate would be determined—when it presented its initial contentions, or at any time thereafter.  But Plexxikon chose not to do so.  Accordingly, Dr. Leonard's Second Supplemental Expert Report should be struck, and Plexxikon should be precluded from presenting evidence, opinion or argument regarding post-2018 damages.  *Finjan*, 2015 WL 3640694, at *4 (granting motion to strike new theory and reasoning that "[a]s this new theory was identified for the first time after the close of fact discovery, prejudice to Defendant is inherent.").

To the extent Plexxikon argues that it should be entitled to present theories for recovery of damages for all periods through trial, Plexxikon is wrong.  Any such entitlement has been waived by Plexxikon's failure to properly disclose such theories in the manner and at the times required by the Patent Local Rules.  *See Looksmart*, 386 F. Supp. 3d at 1232 ("A party that plays fast and loose with its damages theories risks having its whole theory struck, as well as additional sanctions."); *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) (remanding for a determination of "whether Finjan has waived the right to establish reasonable royalty damages under a new theory").

McDermott Will & Emery LLP
Attorneys At Law

**B.   THE SECOND SUPPLEMENTAL EXPERT REPORT IS INCONSISTENT WITH DR. LEONARD'S PRIOR OPINIONS AND TESTIMONY**

Even if Plexxikon's damages contentions were broad enough to support Dr. Leonard's new theory—they were not—the scope of Dr. Leonard's opinions must still be limited to what he disclosed properly during expert discovery.  *See* Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these disclosures [of expert testimony] at the times and in the sequence that the court orders."); *Yeti by Molly*, 259 F.3d at 1106 ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.").

Here, the Court's June 20, 2018 Revised Scheduling Order (ECF No. 80) set the following deadlines: Exchange Opening Expert Reports on February 4, 2019; Exchange Rebuttal Expert Reports on March 14, 2019; Reply Expert Reports on April 11, 2019; and Close of Expert Discovery on May 2, 2019.  ECF No. 80 at 1.  The Court further ordered: "These dates may only be altered by order of the Court and only upon a showing of good cause."  *Id.*

Consistent with these deadlines, Plexxikon served Dr. Leonard's opening expert report on February 4, 2019; his supplemental expert report on February 21, 2019; and his reply expert report on April 11, 2019.  Thereafter, Dr. Leonard sat for deposition on May 1, 2019.

Expert discovery is now closed, and Plexxikon has not moved the Court for leave to reopen expert discovery to present new opinions from its expert.  Accordingly, the October 4, 2019 Second Supplemental Expert Report of Gregory K. Leonard, Ph.D. is untimely and should be struck; Plexxikon should be precluded from presenting such testimony from Dr. Leonard at trial.

To the extent Plexxikon argues that Dr. Leonard's Second Supplemental Expert Report is ███████████████████████████████████████████████████████████ Plexxikon is wrong. Indeed, Dr. Leonard's expert reports ████████████████ were abundantly clear: Dr. Leonard's theories (and the royalty range he identified) applied only to what he called the "relevant time period," which ran only "through 2018."  Leonard Rpt. ¶¶ 56, 68 ("through the end of 2018").

> To determine ***a reasonable royalty rate for the period at issue***, I have considered the relevant economic factors through 2018. . . .  Consistent with this, my analysis focuses on ***the royalty rate that would be negotiated for the period up through 2018***.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

Leonard Rpt. ¶ 68 (emphasis added). ███████████████████████████

████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Nor could Dr. Leonard's prior opinions provide any foundation for his new opinions regarding post-2018 damages. To the contrary, Dr. Leonard only considered "the relevant economic factors through 2018." Leonard Rpt. ¶ 68. And Dr. Leonard explained that different economic considerations would come into play and could alter the reasonable royalty analysis post-2018:

> Potential competition from Array BioPharma, and uncertainty regarding approvals in additional patient populations could influence the negotiated royalties for subsequent time periods . . . .

*Id.* ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████

Accordingly, the October 4, 2019 Second Supplemental Expert Report of Gregory K. Leonard, Ph.D. is untimely and should be struck; Plexxikon should be precluded from presenting such testimony from Dr. Leonard at trial in this case.

### C.    THE SECOND SUPPLEMENTAL EXPERT REPORT IS CONCLUSORY

Finally, even if the Court is inclined (it should not be) to permit Plexxikon and its expert to present new damages theories at this late date, Dr. Leonard's Second Supplemental Expert Report still must be struck, because it is incomplete and unreliable. Pursuant to Rule 26(a)(2)(B), Fed. R. Civ. P., an expert report must contain "a complete statement of . . . the basis and reasons" for an

McDermott Will & Emery LLP
Attorneys at Law

MOTION TO STRIKE 2D SUPP LEONARD REPORT
CASE NO. 4:17-cv-04405-HSG (EDL)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

expert's opinions and "the facts or data considered by the witness in forming them."  And Rule 702, Fed. R. Evid., further requires that "(b) the [expert] testimony is based on sufficient facts or data" and "(d) the expert has reliably applied the principles and methods to the facts of the case."

Dr. Leonard's ████████████ Second Supplemental Expert Report satisfies neither set of requirements.  Specifically, Dr. Leonard does not identify (as required by Fed. R. Civ. P. 26(a)(2)(B)(ii) and Fed. R. Evid. 702(b)) any underlying facts or data on which he relied to arrive at the new opinion that ████████████████████████ █████████████████ ▌ Leonard 2d Supp. Rpt. ¶ 4.  Nor does Dr. Leonard's Second Supplemental Report include any disclosure of (or even suggesting that he performed) ████ ████████████████████████████████ ████████████████ (as required by Fed. R. Evid. 702(d) and Fed. R. Civ. P. 26(a)(2)(B)(i)).  Accordingly, the October 4, 2019 Second Supplemental Expert Report of Gregory K. Leonard, Ph.D. is unacceptably conclusory and should be struck, and Plexxikon should be precluded from presenting such testimony from Dr. Leonard at trial in this case.  *See, e.g.*, *Karl Storz*, 2018 WL 3646842, at *9 (granting motion to strike expert opinions that failed to provide a "complete statement" and "the basis and reasons for them" as required by Rule 26(a)(2)(B)(i)); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) ("While questions regarding which facts are most relevant for calculating a reasonable royalty are properly left to the jury, a critical prerequisite is that the underlying methodology be sound.").

To the extent Plexxikon argues that ████████████████████████ ████████████████████████ Plexxikon is wrong. As discussed above, in his opening expert report ████████████ Dr. Leonard consistently explained that his original analysis related only to the economic considerations in play through 2018, ██████████████████████████████

---

[6]     Novartis assumes that Dr. Leonard intended here to opine that ████████████ ██████████████████████████████

[7]     *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

MOTION TO STRIKE 2D SUPP LEONARD REPORT
CASE NO. 4:17-CV-04405-HSG (EDL)

1

2

3

4

5

6

7

8

9    Ultimately, the district court's task "is to analyze not what the experts say, but what basis

10  they have for saying it." *Wendell*, 858 F.3d at 1232.  Here, such an analysis is rendered almost

11  impossible by the complete lack of disclosure in Dr. Leonard's Second Supplemental Expert

12  Report.  Accordingly, the October 4, 2019 Second Supplemental Expert Report of Gregory K.

13  Leonard, Ph.D. is unacceptably conclusory and should be struck; and Plexxikon should be

14  precluded from presenting such testimony from Dr. Leonard at trial in this case.

15  **V.    CONCLUSION**

16      WHEREFORE, for these and such other reasons as may appear just to the Court, Defendant

17  Novartis Pharmaceuticals Corporation respectfully requests that the Court enter an order:

18      (1) striking the untimely and conclusory October 4, 2019 Second Supplemental Expert

19  Report of Gregory K. Leonard, Ph.D.; and

20      (2) precluding Plexxikon from presenting evidence, opinion or argument regarding the

21  applicable royalty rate or quantum of damages owing for any period post-2018.

22

23

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

1    Dated: October 15, 2019                    Respectfully submitted,

2                                               McDERMOTT WILL & EMERY LLP

3

4                                               By: *Thomas P. Steindler*
                                                    Thomas P. Steindler
5
                                                *Attorneys For Defendant*
6                                               *Novartis Pharmaceuticals Corporation*

7

8        DM_US 163304325-8.067268.0040

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW

- 18 -