United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLEXXIKON INC.,<br><br>Plaintiff,<br><br>v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>Defendant. | Case No. 17-cv-04405-HSG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE SECOND SUMMARY JUDGMENT MOTION**<br><br>Re: Dkt. No. 345 |

Defendant Novartis Pharmaceuticals Corporation ("Novartis") seeks leave to file a second summary judgment motion. Dkt No. 345 ("Mot."). The deadline for dispositive motions has passed and the case is scheduled for trial in June 2020. Nevertheless, Novartis argues that the Federal Circuit's recent decision in *Idenix Pharmaceuticals LLC v. Gilead Sciences Inc.*, 941 F.3d 1149 (Fed. Cir. 2019), constitutes intervening law and provides good cause to deviate from the scheduling and standing orders. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b)." For the reasons detailed below, the Court **DENIES** the motion.

The Court's standing order limits each party to filing one motion for summary judgment and requires a party seeking to exceed that limit to show "good cause." Standing Order for Civil Cases Before District Judge Haywood S. Gilliam, Jr. ("Standing Order") ¶ 17. The Standing Order reflects policy disfavoring piecemeal litigation in federal courts. *See Peasley v. Spearman*, No. 15-cv-01769-LHK, 2017 WL 5451709, at \*3 (N.D. Cal. Nov. 14, 2017); *see also Allstate Fin. Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961) (disapproving of successive motions because "parties ought to be held to the requirement that they present their strongest case for summary judgment when the matter is first raised"). However, the Ninth Circuit has held that

United States District Court
Northern District of California

1  "district courts have discretion to permit successive motions for summary judgment," and that

2  doing so may "foster[] the 'just, speedy, and inexpensive' resolution of suits." *Hoffman v.*

3  *Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010) (quoting Fed. R. Civ. P. 1). Because of the

4  potential for abuse, courts retain discretion to "weed out frivolous or simply repetitive motions."

5  *Id.* (quotation omitted). Additionally, district courts have broad authority to manage their dockets

6  and deny untimely motions absent good cause. *Dietz v. Bouldin*, 136 S.Ct. 1885, 1891–93 (2016);

7  *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1086 (9th Cir. 2002).

8      Novartis urges that a second summary judgment motion is warranted here, in light of

9  *Idenix*, because "all of the asserted claims are invalid for lack of enablement . . . ." *See* Mot. at 1–

10  2. Having considered Novartis's arguments, the Court finds that Novartis fails to show good

11  cause to file a second motion for summary judgment. First, *Idenix* does not represent a change in

12  law that justifies Novartis's delay in bringing the motion. In *Idenix*, the Federal Circuit considered

13  whether claims reciting compounds having a certain chemical formula, in addition to functional

14  limitations requiring an "effective" dose "for the treatment of a hepatitis C virus infection," were

15  enabled. 941 F.3d at 1153–56. The court found that the claims were not enabled because

16  excessive experimentation was required to determine which compounds of the recited formula

17  were "effective against HCV." *Id.* at 1162. In so doing, the court expressly noted that "[o]ur

18  decision in *Wyeth and Cordis Corp. v. Abbott Laboratories* compels this conclusion." *Id.* In

19  *Wyeth*, the court had similarly found that claims that recited both functional and structural

20  limitations were not enabled because a person of ordinary skill in the art would have to test "tens

21  of thousands of compounds" to determine if they met the functional limitations. 720 F.3d 1380,

22  1384–85 (Fed. Cir. 2013).

23      Novartis provides no explanation as to why it could not have brought its desired motion

24  previously under *Wyeth*. A cursory examination of both cases shows that *Idenix* applies the rule

25  established in *Wyeth* and addresses a "striking[ly]" similar set of facts. 941 F.3d at 1162.

26  Accordingly, Novartis fails to show that it acted diligently, and therefore that it has good cause to

27  file the second motion for summary judgment after the dispositive motion deadline. *See Johnson*

28  *v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (explaining that the "good

2

cause" standard for modifying a schedule "primarily considers the diligence of the party seeking the amendment").

Second, the decision in *Idenix* does not apply to the current facts. The court in *Idenix* addressed the question of whether "practicing the full scope of the claims would have required excessive experimentation." 941 F.3d at 1156, 1163. The claims there were limited to the "set of compounds that are effective for treatment of HCV." *Id*. at 1155 (quoting the claim construction order). Thus, because the specification did not describe which compounds were effective for treatment of HCV, it failed to enable "the full scope of the claims." *Id*. at 1163. Here, in its opening brief, Novartis argues that the asserted claims are not enabled because the specification does not specify the compounds that are effective at inhibiting kinase. But kinase inhibition is not a limitation of the asserted claims. *See* Dkt. No. 345-2 ("Proposed MSJ") at 2:22–5:24 (quoting asserted claims). At most, only claims 11 and 12 of the '640 Patent even recite functional limitations—but those limitations describe "treating a subject suffering from melanoma, thyroid cancer or colorectal cancer," not inhibiting kinase. *See id*. Thus, the specifications need not enable compounds that inhibit kinase to allow a person of ordinary skill in the art to practice "the full scope of the claims," and Novartis's motion will not resolve the dispute.[1] *See Idenix*, 941 F.3d at 1156.

Novartis changes tack in its reply, suggesting that its motion is also proper under the utility standard of 35 U.S.C § 101, as utility is incorporated into the enablement analysis. *See* Dkt. No. 353 at 2, 5–6. Although Novartis is correct that utility has been incorporated into the enablement standard, the two are not coextensive and require different types of analysis. *See In re '318 Patent Infringement Litig.*, 583 F.3d 1317, 1323 (Fed. Cir. 2009) (noting enablement is "closely related" to utility); *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1323 (Fed. Cir. 2005)

---

[1] Novartis argues in its reply that "every claim in the asserted patents is directed to compounds that are useful as kinase inhibitors." Dkt. No. 353 ("Reply") at 6:10–11. However, "[i]t is a bedrock principle of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation omitted). Since kinase inhibition is not required by the claims, it is not required to practice the claimed invention. *See CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003) (rejecting argument that effectiveness as a cleaning agent was required for enablement of claims directed to a cleaning process that did not recite such effectiveness).

(explaining how lack of usefulness leads to a rejection under both enablement and utility).

Utility requires a claimed invention to have "significant and presently available benefit to the public." *Grunenthal GMBH v. Alkem Labs. Ltd.*, 919 F.3d 1333, 1345 (Fed. Cir. 2019) (quoting *In re Fisher*, 421 F.3d 1365, 1371 (Fed. Cir. 2005)). The bar for utility is "not high" and only fails if the invention "is totally incapable of achieving a useful result." *Id.* (quoting *Brooktree Corp. v. Adv. Micro Devices, Inc.*, 977 F.2d 1555, 1571 (Fed. Cir. 1992)); *see also id.* (explaining that "any pharmacological activity" satisfies utility). If a patent alleges a benefit, "[a]ll that is necessary is evidence that a POSA would accept the claimed utility as correct." *Id*. at 1346. Enablement, by contrast, requires a patent specification to describe how to "make" and "use" the invention without undue experimentation. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); 35 U.S.C. 112. "If a patent claim fails to meet the utility requirement because it is not useful or operative, then it also fails to meet the how-to-use aspect of the enablement requirement." *In re '318 Patent Infringement Litig.*, 583 F.3d at 1324.

Critically, however, *Idenix* does not address utility or its relationship with enablement at all. Novartis provides no explanation for why it could not have argued lack of utility in its first motion for summary judgment, filed before the dispositive motion deadline. As both parties acknowledge, this case is at a late stage, with pretrial filings submitted and trial set. Given these circumstances, Novartis simply has not shown good cause to reopen dispositive motion briefing to argue lack of enablement or lack of utility.

Accordingly, the Court **DENIES** Novartis's motion for leave to file a second summary judgment motion.

**IT IS SO ORDERED.**

Dated: 1/16/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

4